26 C.C.P.A. (Patents)

## In re NORDSTROM.

## Patent Appeal No. 4097.

Court of Customs and Patent Appeals.

Feb. 6, 1939.

Strauch & Hoffman, of Washington, D. C. (William A. Strauch and James A. Hoffman, both of Washington, D. C., and Lewis D. Konigsford, of Pittsburgh, Pa., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

September 27, 1933, appellant Nordstrom filed an application for patent, serial No. 691,213, in the United States Patent Office entitled "For Valves." The examiner allowed a number of claims but denied others, and still others were cancelled. Nordstrom appealed to the Board of Appeals respecting certain claims denied by the examiner. The board reversed the examiner as to three of the so-appealed claims and allowed them, but affirmed the examiner's decision as to others. Nordstrom thereupon appealed to this court, and brings before it for review the decision of the board affirming the examiner's rejection of claims numbered 31, 32, 67, and 68.

There are certain differences in phraseology between the appealed claims, but no one of them contains any particular limitation which differentiates it from the others in a patentable sense; so, we follow the brief of the Solicitor for the Patent Office in quoting claim 31 as typical: "31. In a valve, a valve casing having a passageway therethrough, a valve member in said casing for controlling flow through said passageway, a separate operating stem for said valve member passing through said casing having a laterally extending sealing surface interfitting with a complementary sealing surface on the casing, means for supplying lubricant between said surfaces, and a secondary seal of packing material about said stem forming part of said complementary seating surface on the casing to prevent outward escape of lubricant from between said surfaces."

The rejection was based upon a prior valve patent to appellant, No. 1,668,168 of May 1, 1928, in view of a patent to E. F. Osborne, entitled "Heating Apparatus," granted January 4, 1881.

The feature of the claims most strongly emphasized is the secondary sealing means, described in claim 31, supra, as a "secondary seal of packing material" about a separate operating stem. This appears to be the chief difference from the disclosure of appellant's prior patent. Discussing this feature, the examiner said: "The Nordstrom patent shows everything included in the finally rejected claims except for the secondary packing about the stem shown by applicant at 28. The valve of the patent was designed to work satisfactorily in low pressure service. Applicant states that this valve when used in high

pressure service tended to leak along the stem since the lubricant seal alone, while sufficient to prevent leakage at low pressures, was insufficient to prevent leakage at high pressures. In order to adapt the valve for higher pressures, an additional or secondary packing was provided around the stem. It is not seen that this addition involves invention, since the properties and uses of the various types of packings are well known in the art. Osborne shows that the particular form of packing used by applicant is old. It is believed this case falls within the doctrine so aptly defined by Judge Bond: 'Where one stove is found to be unequal to the heating of a room, to put another beside it, even though smaller, requires no invention.' Millner v. Voss, C.C. W.D.Va.1882, 48 F. 832, 833, 4 Hughes 262."

The board said:

"This application relates to applying a secondary seal to a valve of conventional type.

"We are of the view that broadly there would be no invention in applying a secondary seal to a valve stem or a valve stem having a laterally extending sealing surface."

However, the board holding in effect that it would not be obvious to place the secondary seal on the threaded portion of the stem allowed the claims which contained limitations embracing that feature.

At the hearing before us, appellant's counsel presented a model which has been quite helpful in our study of the case, and the record contains a number of affidavits; some relating to the commercial success of the invention, and others to featural differences between the device of the application and devices of the prior art, together with differences in results obtained from operation of such respective devices.

A matter earnestly stressed by appellant is that of the involved valve being designed for use in high pressure service. The brief on his behalf says: "The present invention was developed to supply the demand in the high pressure oil fields for a valve that could withstand the enormous pressures encountered, and would be easy to turn and provide a positive shut-off."

Elsewhere in his brief it is said: "These valves are also used on steam lines, mud lines, gas lines in the oil fields and in refineries on steam, gas and high tempera-

668

ture oil lines, and are rapidly gaining favor in other fields where an easy turning valve is required on high pressure service."

There is, as may be seen, nothing in the claims respecting high pressures.

It is the contention of appellant's counsel that appellant has done more than merely bring together "several old seals in juxtaposition, allowing each to work out its own effect, in order to merely secure the sum of the results that might be obtained from the individual seals, each acting alone * * *." It is virtually conceded that if this were all appellant had done he would not be entitled to patent, but it is urged, in substance, that the appealed claims define a structure in which, by reason of the described arrangement of parts, there is a mutuality of action or a cooperation of elements in the attainment of a desired unitary result which was new in the art and involved invention.

It is believed by us that the contention is correct. That appellant has made an improvement in the art is not questioned. His device is shown to have had practical tests. The affidavit of Mr. F. K. Spurrier, a mechanical engineer in charge of the physical laboratory of Merco Nordstrom Valve Company (apparently appellant's assignee), shows, quite clearly we think, the improved results obtained over devices of the prior art in preventing leakage when the operation of the valve was under high pressure. It is possible, of course, that this improvement resulted solely from the combination shown in the allowed claims. However this may be, it is conceded that the prior art does not disclose a second seal in any relationship, whether on the threaded portion of the operating stem (held patentable by the board) or otherwise. It was merely held, in effect, that, in view of the prior art, it would be obvious to place a second seal on the unthreaded portion of the operating stem.

It is not our purpose to use the reasons given by the board for granting the narrow claims as an argument in support of the allowance of the broader ones, but upon the record in the case we feel constrained to disagree with the tribunals of the Patent Office respecting those broader ones. It is our view that appellant's development of the device may quite properly be held to have been inventive in nature, involving something more than mere mechanical skill.

Accordingly, the decision of the Board of Appeals, affirming the decision of the examiner as to the four appealed claims, is reversed.

Reversed.